IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

ESTATE OF DWANA VONCIA         )
LONDON-RICHARDSON, and         )
Her Representative, AYUNA      )
LONDON, her natural daughter,  )
                               )
    Plaintiff,                )
                               )
    v.                        )    NO. 4:13-cv-00927-RBP
                               )
TERRY SURLES, et al.,          )
                               )
    Defendants.               )

**MEMORANDUM OPINION**

    This cause comes before the court on defendants Terry Surles, Austin Nash and Terry Macrum's (collectively the "SCC Defendants") Motion to Dismiss the First Amended Complaint,[1] filed on August 21, 2013.

**Plaintiff's Claims**

    The plaintiff, Ayuna Johnae London, is the daughter of Dwana Voncia London-Richardson ("Ms. Richardson") and the representative of her estate. In this capacity, she brings suit against St. Clair County Sheriff Terry Surles and St. Clair County Jail Administrators Austin Nash and Terry Marcrum in their official and individual capacity. She also brings suit against Southern Health Partners, Inc.; Jennifer Eisel; and fictitious parties "Deputies John Doe(s)," "Jailers John Doe(s)," "Drs. John Doe(s)" and "Nurses Jane Doe(s)."

    The factual allegations are common to each cause of action alleged in the plaintiff's First Amended Complaint.

---

[1] The Complaint was amended to correct the name of defendant Southern Health Partners, Inc.

1

On May 19, 2011, a Thursday, Ms. Richardson was arrested pursuant to an outstanding warrant on an unpaid traffic fine. The following day, the plaintiff came to the jail to give the jailers her mother's medication and immediately noticed that Ms. Richardson was "walking very slowly and dragging her feet … sweating and having problems breathing." (Doc. 13-¶26). Ms. Richardson told the plaintiff that the jailers would not allow her to take her medicine. Further, Ms. Richardson stated that other inmates had attempted to bring her food tray to her, since she could hardly walk, but were stopped by the jailers. The jailers then moved Ms. Richardson to another area of the jail.

Ms. Richardson then told Nurse "Jane Doe," who was on duty, that she was having trouble breathing and walking and that her legs were hurting. The plaintiff then asked the nurse why her mother was not being given her medication. The nurse responded that she could not discuss patient information. The plaintiff, again, told the nurse that her mother needed her medication.

The next day, "the defendants knew that Ms. Richardson's condition had deteriorated to the point that she could hardly walk, she was suffering from severe pain in both legs, and she could hardly breathe." (Doc. 13-¶33). On Sunday, the plaintiff received a phone call from another inmate telling her that Ms. Richardson had been moved to medical lockdown "by the defendants."

The next day, before Ms. Richardson's scheduled court appearance, the plaintiff saw her mother lying on the ground next to Deputy/Jailer "John Doe's" police car. Ms. Richardson was sweating and having trouble breathing. Unfortunately, her asthma pump was not working and Ms. Richardson's breathing continued to get worse. Deputy/Jailer "John Doe" refused the plaintiff's request to take Ms. Richardson to the hospital. Instead, he provided her with a

wheelchair and took her to the courthouse.  The plaintiff further pleaded with Deputy/Jailer "John Doe," but he refused to seek medical assistance.  Once in the courtroom, Ms. Richardson laid down on the courtroom floor and began shaking.  She then passed away on the courtroom floor.

Count I alleges a violation of constitutional rights against all defendants under 42 U.S.C. § 1983.  The complaint alleges a deliberate indifference violation of the Fourth, Eighth, and Fourteenth Amendments.  The count states "[t]he defendants knew that, in her feeble, deteriorating condition, sweating, barely able to walk …" Ms. Richardson needed medical attention.  It further states that the SCC Defendants instituted inadequate policies and training procedures that led to the constitutional violation.

Count III[2] contends that all defendants were negligent and/or wanton and proximately caused the death of Ms. Richardson.

Count IV asserts a wrongful death claim against all defendants under Ala. Code § 6-5-410.

## Legal Standard

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  All "reasonable inferences" are drawn in favor of the plaintiff. *St. George v. Pinellas County*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "[U]nsupported conclusions of law or of mixed fact and law have long been recognized

---

[2] Because Count II does not allege a cause of action against the SCC Defendants, it is not discussed here.

not to prevent a Rule 12(b)(6) dismissal." *Dalrymple v. Reno*, 334 F.3d 991, 996 (11th Cir. 2003) (quoting *Marsh v. Butler County*, *Ala.*, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, a complaint only requires "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).[3] The Supreme Court explained in *Twombly* that a complaint "does not need detailed factual allegations," but that the allegations "must be enough to raise a right to relief above the speculative level." *Id*. at 555. Furthermore, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id*. at 556 (quotation marks omitted). The Supreme Court clarified the *Twombly* standard in *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009): "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." The Eleventh Circuit has explained that the *Twombly*/*Iqbal* rule "'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Watts v. Fla. Int'l. Univ.*, 495 F.3d 1289, 1295-96 (11th Cir. 2007) (quoting *Twombly*, 550 U.S. at 556). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 129 S.Ct. at 1937.

## Discussion

### I. § 1983 Claims against SCC Defendants in their Official Capacity

---

[3] The Supreme Court in *Bell Atl. Corp. v. Twombly* abrogated the oft-cited standard that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief" set forth in *Conley v. Gibson*. *See Bell Atl. Corp.*, 127 S. Ct. at 1968 (quoting *Conley*, 355 U.S. 41, 45-46 (1957)). The Supreme Court stated that the "no set of facts" standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp.*, 127 S. Ct. at 1969.

The SCC Defendants argue that the plaintiff's § 1983 claims against them in their official capacity are barred by U.S. CONST. amend. XI.  The plaintiff agrees.  *See Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001) ("Alabama sheriffs are considered arms of the state and protected by sovereign immunity in suits against them in their official capacity."); *Lancaster v. Monroe Cnty., Ala.*, 116 F.3d 1419, 1429 (11th Cir. 1997) ("Alabama jailers are state officials entitled to Eleventh Amendment immunity when sued in their official capacities.").  Consequently, all § 1983 claims against the SCC Defendants in their official capacity will be dismissed.

## II. § 1983 Claims against SCC Defendants in their Individual Capacity

"Government officials performing discretionary functions are entitled to qualified immunity insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Lancaster*, 116 F. 3d at 1424.  The parties in this case do not appear to dispute that the defendants were at all relevant times performing official discretionary duties; instead, they dispute whether a clearly established constitutional right was violated.

Under § 1983, a supervisor cannot be held liable under respondeat superior. *Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001).  A valid § 1983 claim against a supervisor exists "'either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions [or inactions] of the supervising official and the alleged constitutional violation.'" *Keating v. City of Miami*, 598 F.3d 753, 762 (11th Cir. 2010) (quoting *Gonzalez v. Reno,* 325 F.3d 1228, 1234 (11th Cir.2003) (citing *Braddy v. Fla. Dep't of Labor & Employment Sec.,* 133 F.3d 797, 802 (11th Cir.1998))).

5

The plaintiff asserts that the SCC Defendants' deliberate indifference to Ms. Richardson's medical condition while in their custody violated her constitutional rights. The Eleventh Circuit has explained that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster*, 116 F. 3d at 1425 (11th Cir. 1997) (citing *Hill v. Dekalb Regional Youth Detention Center*, 40 F. 3d 1176, 1186 (11th Cir. 1994)). The plaintiff must "present some evidence of prison officials' subjective awareness of a substantial risk of serious harm to the inmate." *Goodman v. Kimbrough*, 718 F.3d 1325, 1333-34 (11th Cir. 2013) (citations omitted). Furthermore, whether a jail official had the "requisite knowledge of the seriousness of [an inmate's] medical needs is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Lancaster*, 116 F. 3d at 1426 (citing *Farmer v. Brennan*, 511 U.S. 825, 840 (1994)).

The SCC Defendants contend that "the Amended Complaint is noticeably absent any allegations that [the SCC Defendants] took any action or were aware of the decedent's medical condition." (Doc. 22-17); s*ee Marsh*, 268 F.3d at 1035 (finding that a Sherriff could not be directly liable when the plaintiff did not plead any personal knowledge of or participation in the alleged constitutional violation). The SCC Defendants further contend that the generic use of "defendants" in the complaint fails to give them fair notice of the specific claims against them. Thus, they conclude that plaintiff has no claim for liability pursuant to § 1983.

The plaintiff responds that she did plead specific knowledge on the part of the SCC defendants. In the complaint, the plaintiff alleges "the <u>defendants</u> knew that Ms. Richarsdon's condition had deteriorated to the point that she could hardly walk, she was suffering from severe pain in both legs, and she could hardly breathe." (Doc. 13 ¶33); (Doc. 13 ¶61). She further

states that "despite having such notice," the *defendants* failed to provide her with necessary medical care. (Doc. 13 ¶34); (Doc. 13 ¶62). The plaintiff then points the court to *Ancata v. Prison Health Servs., Inc.* to demonstrate the factual sufficiency of her complaint:

> At the stage in the litigation at which Sheriff Butterworth was dismissed, i.e., prior to discovery, it is impossible to say whether Butterworth played a role in demanding the court orders as a condition of obtaining medical care. Nor is it known which, if any, of the defendants chose to place the financial interest of the county ahead of Ancata's medical needs. Thus, dismissal prior to discovery was unwarranted.

769 F.2d 700, 706 (11th Cir. 1985) (internal citations omitted).[4]

The court concludes that the plaintiff has not sufficiently alleged a claim for § 1983 liability against the SCC Defendants. The plaintiff's complaint alleges no facts, only conclusions, that support the contention that Surles, Nash or Macrum individually knew of Ms. Richardson's medical condition or directly participated in refusing her treatment. The complaint is completely bare as to the activities and/or knowledge of the SCC Defendants.[5] The complaint only attributes actions and knowledge to Nurse Jane Doe and Deputy/Jailer John Doe and defendants in general. Contrary to the plaintiff's assertion, her repeated conclusory allegations that "the defendants knew" will not suffice to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 680-81 ("These bare assertions … amount to nothing more than a 'formulaic recitation of the elements.'") (internal citations omitted). Rather, the complaint must allege facts to support the plaintiff's conclusions. *Id*.

Plaintiff's reliance on *Ancata* is also misplaced. First, the court notes that *Ancata* was decided before both *Twombly* and *Iqbal*. The *Ancata* court even states the abrogated "no set of facts" standard for a motion to dismiss. 769 F.2d at 702-03. Second, in *Ancata* the issue was "whether the district court properly … determined that any liability [the defendants] may be

---

[4] Decided prior to *Twombly/Iqbal*.
[5] The plaintiff was unable to do so at the recorded hearing. Plaintiff was given several opportunities to do so.

exposed to was based solely upon notions of respondeat superior." *Ancata*, 769 F.2d at 703. The Eleventh Circuit found the district court erred because "the plaintiff alleges that the actions and policies of the county and the sheriff's office did affect in various ways the health care received by Mr. Ancata." *Id*. at 706.  Again, in the present case the plaintiff has not alleged any actions or policies attributable to the SCC Defendants, the sheriff's office or the jail's administration.  Further, she has not alleged any facts to support the SCC Defendants' knowledge of the circumstances.  In a case based upon deliberate indifference in releasing an inmate with a serious medical condition, the Eleventh Circuit stated:

> Owens makes no allegation that the Sheriff personally participated in Owens's release. Nor does Owens allege that the Sheriff was aware of the particular circumstances of Owens's medical condition when he was released or of the manner of his release on the night of the assault. The Sheriff's potential liability, therefore, can be only policymaker liability, [if appropriate].

*Marsh*, 268 F.3d at 1035.

In her complaint the plaintiff provides only conclusory allegations that the SCC Defendants violated the plaintiff's constitutional rights through inadequate policies and training procedures.  No detail is alleged. Moreover, in her Memorandum in Opposition to Defendants' Motion to Dismiss the plaintiff states the following:

> The defendants conveniently set up a straw man argument, by characterizing the plaintiff's claims against them as supervisory claims, and then citing well settled case law that supervisory claims generally do not lie under 42 U.S.C. § 1983. The claims pled by the plaintiff in the complaint are based on the defendants' failure to act. *The complaint is not about widespread abuse, nor is it about what the defendant's subordinates did or failed to do.  The claims are about what the defendants personally failed to do.  The defendants' arguments about supervisory liability are thus inapposite.*

(Doc. 15) (emphasis added).[6]

---

[6] This statement further demonstrates that the allegations are conclusory.

One of the ways a plaintiff may prove deliberate indifference claims is by alleging and proving "a policy or custom that resulted in the constitutional deprivation." *Williams v. Limestone Cnty., Ala.*, 198 F. App'x 893, 896 (11th Cir. 2006) (internal citations omitted). A failure to adequately train subordinates falls under this type claim. *Id*. The plaintiff does not plead any facts about any supposedly inadequate policies or training procedures – or about any policy or training procedure.[7] She does not allege that it was policy of the Sheriff or the jailers to deny detainees medical care. She does not allege that the SCC Defendants failed to train their employees adequately to respond to medical emergencies. Her mere "conclusory allegations [that the policies are inadequate] are not entitled to an assumption of truth." *Randall v. Scott*, 610 F.3d 701, 709 (11th Cir. 2010). Thus, Count I does not allege a basis to hold the SCC Defendants liable under § 1983.

### III. State Law Claims

The state law claims are:

1. Common law negligence and wantonness under Count III. It appears that the plaintiff agrees that this count should be dismissed.

2. As to Count IV which alleges wrongful death under Ala. Code § 6-5-410, the plaintiff acknowledges that defendant Surles has absolute immunity and that this count should be dismissed as to Surles.

The SCC defendants argue that defendants Nash and Macrum are entitled to absolute immunity pursuant to Ala. Code § 14-6-1. In a very similar case, *Johnson v. Conner*, 720 F.3d 1311 (11th Cir. 2013), the Eleventh Circuit has certified questions to the Supreme Court of Alabama whose answers could be decisive of this case. The Eleventh Circuit has indicated that substantial doubt exists as to the effective pertinent dates and application **of** Section 14-6-1, and

---

[7] As indicated, she disavows such claims.

the intent of "in compliance with the law" in said section. The Eleventh Circuit has further stated where there is such substantial doubt, a federal court (including this one) should so certify the questions. This court feels bound to await the Supreme Court of Alabama's answers before entering an order or judgment in this case.

In addition to Section 14-6-1 immunity, Nash and Marcum claim "state agent" immunity.[8] The plaintiff argues that any such immunity is foreclosed by Ala. Code § 14-6-19. There may be facts which would preclude "state agent" immunity. *See Ex parte Cranman*, 792 So.2d 392, 405 (Ala. 2000); *Hollis v City of Brighton*, 950 So.2d 300 (Ala. 2006); *Howard v. City of Atmore*, 887 So.2d 201, 206 (Ala. 2003); *Giambrone v. Douglas*, 874 So.2d 1046, 1052 (Ala. 2003); *Ex parte Wood*, 852 So.2d 705 (Ala. 2002) and *Wilson v. Manning*, 880 So.2d 1101, 1102 (Ala. 2003).

## Conclusion and Further Comments

Within ten (10) calendar days, the parties may file responses including the following:

(a) Any disagreements with the Memorandum Opinion.

(b) Any position as to whether the court should enter separate final judgments as to any issue and any parties.

(c) Whether there is diversity jurisdiction.

(d) Whether, if there is no diversity jurisdiction, this case should be dismissed without prejudice because of the supplemental nature of the state law claims.

(e) Whether the Supreme Court of Alabama's decision in *Conner* could be decisive of all state claims.

(f) Whether the court should sever the claims against the defendants other than the SCC Defendants and proceed against said other defendants.

---

[8] Surles is apparently absolutely immune from all claims in this case, federal and state.

This the 9th day of October, 2013.

                                     **ROBERT B. PROPST**
                                **SENIOR UNITED STATES DISTRICT JUDGE**